FILED

2026 Jul-13  PM 12:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RENASANT BANK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 2:25-cv-1798-ACA** |
| | } | |
| **SIO2 MEDICAL PRODUCTS,** | } | |
| **LLC, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

Plaintiff Renasant Bank and Defendant SIO2 Medical Products, LLC entered into a loan agreement. SIO2 failed to make payments mandated by the loan, and this lawsuit followed. Renasant Bank asserts two claims under Alabama law against SIO2: one for breach of the parties' credit agreement ("Count One") and one for breach of revolving note ("Count Two"). Renasant Bank moves for summary judgment on Counts One and Two, and SIO2 does not oppose summary judgment. (Doc. 16; doc. 27 ¶ 3). The court **WILL GRANT** Renasant Bank's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor and against SIO2. (Doc. 16).

1

## I.    BACKGROUND

In deciding a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). (quotation marks omitted). Although the motion is unopposed, the court "cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami*, 363 F.3d 1099, 1101 (11th Cir. 2004). But the court is not required to perform a "sua sponte review [of all] the evidentiary materials on file," but must only "ensure that the motion itself is supported by evidentiary materials." *Id.* at 1101–02; *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials."). Accordingly, the court limits its review to the materials submitted and cited by Renasant Bank in support of its motion.

In 2021, Renasant Bank and SIO2 entered into a credit agreement. (Doc. 17-1 at 1, 39–41). Under the agreement, Renasant Bank agreed to provide a loan facility up to $20 million based on SIO2's account receivables and a separate revolving loan facility with the principal amount of $5 million. (*Id.* at 1, 13–14, 16; doc. 17-2 at 1; doc. 17 ¶ 5). The revolving loan facility was evidenced by a revolving note. (Doc. 17-1 at 16). Over the next few years, the parties amended the agreement several

times, including eliminating the loan facility based on SIO2's account receivables. (Doc. 17 ¶¶ 6, 9; doc. 17-8 at 2). Each amendment either modified the revolving loan facility's principal amount or extended the loan's maturity date. (Doc. 17 ¶¶ 6, 9, 13).

In 2024, Renasant Bank and SIO2 executed an "Eighth Amendment to Amended and Restated Credit Agreement" and a "Second Amended and Restated Revolving Note." (Doc. 17-9; doc. 17-10). These amendments reduced the revolving loan facility's principal amount to $7,500,000. (Doc. 17-9 at 2). A few months later, a ninth amendment extended the maturity date to July 31, 2025. (Doc. 17 ¶ 13; doc. 17-12 at 2). SIO2 made four payments, reducing the principal balance to $4,500,000. (Doc. 17 ¶ 14).

But in the Ninth Amendment, SIO2 also agreed to make monthly payments of all accrued interest on the revolving loan facility, and it failed to do so in March, April, and May 2025. (Doc. 17 ¶¶ 15–16; doc. 17-12 at 13). In May 2025, Renasant Bank notified SIO2 of its breach, and SIO2 never cured the breach. (Doc. 17 ¶¶ 17–20; doc. 17-13). In September 2025, Renasant Bank accelerated the loan. (Doc. 17-14). SIO2 has failed to pay the remaining $4,500,000 principal balance, $465,601.25 in interest, and $14,291.68 in late charges.  (Doc. 17 ¶ 23).

## II.    DISCUSSION

### 1. Liability

Renasant Bank moves for summary judgment on its claims against SIO2. (Doc. 19 at 7–8). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Both claims against SIO2 are for breach of contract. (Doc. 1 ¶¶ 34–43). To prevail on a breach of contract claim under Alabama law, the plaintiff must establish (1) the existence of a valid contract; (2) the plaintiff's own performance under the contract; (3) the defendant's nonperformance; and (4) damages. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). Renasant Bank has presented undisputed evidence of valid contracts, its own performance under those contracts, and SIO2's failure to perform. (*See generally* doc. 17 ¶¶ 5, 13–23; doc. 17-1; doc. 17-12; doc. 17-14). Renasant Bank has also presented undisputed evidence that SIO2 failure's to perform has damaged it. (Doc. 17 ¶¶ 14, 20–21, 23). Accordingly, the court **WILL GRANT** Renasant Bank's motion for summary judgment on Counts One and Two. The undisputed evidence establishes that, as of January 23, 2026, Renasant Bank is entitled to $4,500,000 for the principal balance, $465,601.25 in accrued interest, and $14,291.68 in late charges. (Doc. 17 ¶ 23).

2.  Attorney's Fees and Costs

Renasant Bank also requests attorney's fees and costs. (Doc. 19 at 8–10). Under Alabama law, a party may recover attorney's fees when provided by contract. *Huntley v. Regions Bank*, 807 So. 2d 512, 518 (Ala. 2001). And the contract allows Renasant Bank to recover "all reasonable attorneys' fees . . . and any out-of-pocket expenses" or costs. (Doc. 17-1 at 33–34; *see* doc. 17-10 at 1).

Renasant Bank requests as to the amount of attorney's fees are inconsistent. In one section of the motion, the bank requests $20,000 in attorney's fees. (Doc. 19 at 5 ¶ 13; *see also* doc. 18 at 2 ¶ 8 (claiming that the motion "seeks only $20,000 of its legal fees and expenses incurred to date")). But another section of the motion seeks more, explaining that the bank has paid $33,527.67 in fees and expenses. (Doc. 19 at 9; *see* doc. 18). The requested relief seeks $4,999,892.93 (which includes $20,000 in attorney's fees) "plus . . . Renasant's reasonable attorneys' fees, costs, and expenses incurred in enforcing the Loan Documents." (Doc. 19 at 10; *see also* doc. 16 at 2). So the court therefore is left unsure the specific amount requested.

## III.  CONCLUSION

The court **WILL GRANT** Renasant Bank's motion for summary judgment. (Doc. 16). The court **WILL ENTER SUMMARY JUDGMENT** in its favor on **July 24, 2026**. The court **WILL AWARD** $4,979,892.93 in damages (comprised of $4,500,000 for the principal balance, $465,601.25 in accrued interest, and

5

$14,291.68 in late charges), plus (i) pre-judgment interest at the contract rates through the date of judgment, (ii) post-judgment interest at the applicable statutory rate pursuant to 28 U.S.C. § 1961, (iii) all recoverable late charges and fees through the date of judgment.

**On or before July 21, 2026**, Renasant Bank must file a calculation of its requested attorney's fees. To the extent that Renasant Bank seeks more than the $33,527.65 requested in its summary judgment motion, it must submit evidence as to the reasonableness of the requested amount.

**DONE** and **ORDERED** this July 13, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE